IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHERYL NYKIEL, individually and as )
ADMINISTRATRIX of the ESTATE of )
GREGORY T. NYKIEL, deceased, )
)
        Plaintiff, )
     v. ) Civil Action No. 08-0813
)
BOROUGH OF SHARPSBURG, SHARPSBURG )
POLICE DEPARTMENT, LEO RUDZKI, )
BOROUGH OF ASPINWALL, ASPINWALL )
POLICE DEPARTMENT, JOHN SABOL, )
BOROUGH OF BLAWNOX, BLAWNOX POLICE )
DEPARTMENT, GEORGE BUCHA, THOMAS )
DUFFY, MATT FUSCO, BOROUGH OF )
MILLVALE, MILLVALE POLICE )
DEPARTMENT, MIKE VITH, INDIANA )
TOWNSHIP, INDIANA TOWNSHIP POLICE )
DEPARTMENT, TOWNSHIP OF O'HARA, )
O'HARA POLICE DEPARTMENT, JASON )
MIDDLEBEE, TOWNSHIP OF HAMPTON, )
HAMPTON POLICE DEPARTMENT, TOWNSHIP )
OF SHALER, SHALER POLICE DEPARTMENT, )
BRIAN KELLY, ERIC STEGMAN, RICHARD )
ZILAITIS, SHAWN STELITANO, RICHARD )
FOWLER, BOROUGH OF ETNA, ETNA POLICE )
DEPARTMENT, and CHAD MITCHELL, )
)
        Defendants. )

MEMORANDUM

Gary L. Lancaster,
Chief Judge.                                  May 17, 2010

     This is a civil rights case. Plaintiff Cheryl Nykiel, individually and on behalf of the estate of her son, Gregory T. Nykiel, brings this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("section 1983").

     Pending before this court is defendants' motion to strike portions of the expert report and opinions of Dr. Bennet I. Omalu, and to strike the expert reports and opinions of Dr. Werner U.

Spitz and Mr. D.P. Van Blaricom in their entireties pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). [Doc. No. 141].

On May 12, 2010, the court held a Daubert hearing. The court orally denied defendants' motion on the record. The court's reasons for its ruling are as follows.

I. FACTUAL BACKGROUND

Plaintiff alleges that on November 14, 2006, defendant officers stopped Mr. Nykiel's vehicle without reasonable suspicion or probable cause while he was driving in Sharpsburg, Pennsylvania. Immediately following the traffic stop, plaintiff contends that defendant officers pursued Mr. Nykiel in a cross-jurisdictional police chase and arrested him. According to plaintiff, while holding Mr. Nykiel at the Sharpsburg Police Station, defendant officers beat him and repeatedly shocked him with a Taser, thereby causing his death.

On June 12, 2008, plaintiff filed this action alleging: (1) a section 1983 claim against defendant police officers, contending that they violated Mr. Nykiel's Fourth, Eighth, and Fourteenth Amendment rights (Count I); (2) a section 1983 claim against defendant boroughs, townships, and police departments, alleging that their policies, practices, and customs violated those same rights of Mr. Nykiel (Count II); and (3) Pennsylvania state law claims against all defendants for battery (Count III), wrongful

death (Count IV), and indemnification (Count VI). Plaintiff seeks compensatory and punitive damages.

Stipulations and motions practice have narrowed plaintiff's claims, which remain viable against the following five defendants: (1) the Borough of Sharpsburg; (2) officer Leo Rudzki; (3) officer Thomas Duffy; (4) the Borough of Etna; and (5) officer Chad Mitchell.[1]

II. DISCUSSION

Defendants do not challenge Dr. Omalu's, Dr. Spitz's, or Mr. Van Blaricom's qualifications as experts. Rather, defendants contend that these experts' opinions and reports should be excluded because they are unreliable and are not supported by any technical principles or methodology as required by the Federal Rules of Evidence and Daubert.

A. General Standard of Admissibility for Expert Testimony

As an initial matter, we note that preliminary questions concerning the qualification of a person to be a witness is a threshold matter that must be determined by a trial court. See Fed. R. Evid. 104(a).

---

[1] Plaintiff refers to certain police departments as defendants remaining in this case. [Doc. No. 145, at ¶ 13]. A police department has no separate corporate identity apart from a municipality and, thus, is not a separate entity able to be sued. See Johnson v. City of Erie, et al., 834 F. Supp. 873, 879 (W.D. Pa. 1993).

3

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The United States Supreme Court has acknowledged the "liberal thrust" of the Federal Rules of Evidence pertaining to expert testimony, and the intent to expand the use of expert testimony, not restrict it. See Daubert, 509 U.S. at 587 (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 163 (1988)).

The United States Court of Appeals for the Third Circuit has delineated the requirements of Rule 702 as follows: (1) the proffered witness must be an "expert" (i.e., qualified by knowledge, skill, training, or education); (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (finding expert was qualified and his methodologies were reliable).

4

While a party must make more than a prima facie showing that his or her expert's methodology is reliable, the court of appeals has cautioned that "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994) (stating that the proponent of expert testimony "only [has] to demonstrate by a preponderance of evidence that their [expert's] opinions are reliable"); see also In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999) (stating that "the standard for determining reliability is not that high, even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702") (internal citation and quotations omitted).

B. The Reliability Standard

The Federal Rules of Evidence require the trial judge to ensure that any and all expert testimony admitted is "not only relevant, but reliable." Daubert, 509 U.S. at 589. The court of appeals has stated that "an expert's testimony is admissible so long as the process or technique used in formulating the opinion is reliable," Pineda, 520 F.3d at 247 (citing Paoli, 35 F.3d at 742).

As a general rule, "the reliability threshold is a low one." Hamilton v. Emerson Electric Co., 133 F. Supp. 2d 360, 370 (M.D. Pa. 2001). "[A]n expert opinion must be based on reliable methodology and must reliably flow from that methodology and the facts at issue-but it need not be so persuasive as to meet a

5

party's burden of proof or even necessarily its burden of production." Heller v. Shaw Industries, Inc., 167 F.3d 146, 152 (3d Cir. 1999).

In evaluating whether a particular methodology is reliable, and reliably applied to the facts, we may consider non-exclusive factors such as the following: (1) whether the method consists of a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Paoli, 35 F.3d at 742 n.8. These factors, however, do not necessarily apply in every case. Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806-07 (3d Cir. 1997). We may also consider "independent, non-Daubert reasons" to evaluate expert testimony. Hamilton, 133 F. Supp. 2d at 374-75.

C. Defendants' Daubert Challenges

With the above standards in mind, we will address defendants' Daubert challenges to Dr. Omalu's, Dr. Spitz's, and Mr. Van Blaricom's expert reports and opinions separately below.

1. Dr. Omalu

6

Dr. Omalu is a neuropathologist. At the time of Mr. Nykiel's death, Dr. Omalu was also an Associate Medical Examiner for Allegheny County, Pennsylvania. Dr. Omalu performed an independent medical examination of Mr. Nykiel's body on the day he died. Dr. Omalu ultimately concluded that:

> [Mr. Nykiel] died as a result of acute cocaine overdose. Compression of the neck and fracture of the cervical spine are contributory factors to his demise.

[Doc. No. 142, Ex. A, at p. 3].

Defendants do not challenge the reliability of Dr. Omalu's conclusion that Mr. Nykiel died of an acute cocaine overdose. They argue, however, that the portion of Dr. Omalu's conclusion and the portions of his report and opinions pertaining to the compression of Mr. Nykiel's neck and the fracture of his cervical spine should be stricken because they are unreliable. [Doc. No. 143, at p. 7].

For example, Dr. Omalu's report indicates that "There [was] a non-displaced fracture of the cervical spine [of Mr. Nykiel] at the C6-C7 level...." [Doc. No. 142, Ex. A, at p. 14]. Defendants contend that such language (and similar language found elsewhere in the report) should be stricken because "[n]o explanation or description was given for the basis of this finding; whether it was felt, viewed or apparent on X-ray", and the "report failed to provide any specific detail of where the alleged fracture

was located on the vertebrae .... [or to explain] which elements of the cervical spin were fractured...." [Doc. No. 143, at p. 8].

Applying the flexible standard set forth by the Federal Rules and Daubert, we are satisfied that Dr. Omalu used reliable principles and methods in formulating his opinions as to the cause of Mr. Nykiel's death and factors that may have contributed to his death. Dr. Omalu is a neuropathologist with medical expertise from which he is able to determine causes of death. The portions of Dr. Omalu's diagnosis relating to the compression of the neck and fracture of the cervical spine are supported by Dr. Omalu's findings from his external and internal examination of Mr. Nykiel's body.

From his external examination, Dr. Omalu made several observations and findings regarding electro-thermal injury to Mr. Nykiel's face, chest, and extremities as well as blunt force trauma to his head, face, neck, trunk, and extremities. Regarding his finding of a cervical fracture, the report indicates that Dr. Omalu observed a contusion on the right posterior and lower neck, a contusion above the lip, a contusion on the tip of the nose, and an abrasion on the nose. [Doc. No. 142, Ex. A, at pp. 6-7].

From his internal examination of Mr. Nykiel, Dr. Omalu opined in part that:

> Focal, caudal, anterior cervical paravertebral hemorrhages are noted. There is a non-displaced fracture of the cervical spine at the C6-C7 level with focal surrounding soft tissue hemorrhage and focal epidural

8

>hemorrhage. The spinal column and vertebral bodies reveal
>no degenerative changes.

[Id. at p. 14].

Dr. Omalu's report sets forth his findings from his internal and external examinations of Mr. Nykiel's body on the night he died, and Dr. Omalu bases his conclusions on those findings. Contrary to defendants' position, Dr. Omalu need not explain every detail regarding his observations, findings, and conclusions for his report and opinions to be admissible in their entirety. The fact that Mr. Nykiel's vertebrae may not have been preserved, that there may not be photographs or x-rays available for independent review, or that Dr. Omalu does not mention in his report whether he viewed or felt the fracture or where it was located does not change our finding that Dr. Omalu's expert report and testimony satisfies Daubert.

The concerns and arguments raised in defendants' motion can be fully explored and addressed on cross-examination, as they go to the weight of Dr. Omalu's report and testimony, not their admissibility. Accordingly, defendants' motion to strike portions of the report and opinions of Dr. Omalu will be denied.

2. Dr. Spitz

Defendants argue that Dr. Spitz's report should be stricken from the record in its entirety because his opinions do not "fit" the facts of this case, lack reliability, and are based upon "pure junk science." [Doc. No. 143, at pp. 10-17].

9

First, we address defendants' argument that Dr. Spitz's report does not "fit" the facts of this case. In assessing whether the proffered expert testimony is a "fit" with the facts at hand, the court must ascertain whether the testimony is "relevant for the purposes of the case" and whether it "assist[s] the trier of fact." Schneider ex rel. Estate of Schneider v. Fried, et al., 320 F.3d 396, 404 (3d Cir. 2003). This "helpfulness standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. (quoting Daubert, 509 U.S. at 591-92).

Here, the factual dispute concerns the cause of Mr. Nykiel's death. Dr. Spitz bases his opinions and conclusions on several different elements, including his review and analysis of the autopsy report, photographs taken of Mr. Nykiel's body and the scene of his death, and deposition testimony provided in this case. His expert medical opinion based upon his review of such information would assist the trier of fact on the issue of causation. Therefore, the "fit" prong has been satisfied here.

Defendants also argue that Dr. Spitz's methodology should be excluded as unreliable because Dr. Spitz did not conduct any independent examination of the physical evidence and relied "entirely" upon Dr. Omalu's autopsy report without reviewing the neurological or toxicological reports. [Doc. No. 143, at p. 17].

First, we note that "[p]hysicians are not required to review every record or perform every conceivable test in order to reach a reliable conclusion as to causation. Johnson v. Vane Line Bunkering, Inc., No. 01-5819, 2003 WL 23162433, at *6 (E.D. Pa. Dec. 30, 2003). Indeed, the court of appeals has indicated that "there will be some cases in which a physician can offer a reliable differential diagnosis without examining the patient, looking at medical records, taking a medical history, and performing laboratory tests." Id. (citing Paoli, 35 F.3d at 762). Thus, the issue for us to decide is not whether Dr. Spitz performed every available medical test or reviewed every available medical record, but whether the failure to perform a particular test or to review a particular record renders his opinion unreliable. Id. We find that it does not.

Plaintiff contends that Dr. Spitz should be permitted to rely upon the independent medical examiner's autopsy report and other evidence in the case in reaching his conclusions due to his training and experience as a medical doctor specializing in forensic pathology and toxicology. [Doc. No. 144, at pp. 10-12]. We agree. "[N]o support exists in the text or history of the Federal Rules of Evidence, or case law to limit an expert from reviewing and referring to the opinions of other experts." Keller v. Feasterville Family Health Care Center, 557 F. Supp. 2d 671, 681 (E.D. Pa. 2008) (citation omitted).

Dr. Spitz's failure to review all of the reports related to the autopsy and to conduct an independent physical examination of Mr. Nykiel are topics appropriate for cross-examination. They do not warrant exclusion of Dr. Spitz's opinions and report. Nor does testimony and other evidence in the record that may contradict Dr. Spitz's opinion that compression was ever applied to Mr. Nykiel's neck require exclusion of Dr. Spitz's opinions and report . Such evidence goes to the weight of Dr. Spitz's testimony and report, rather than their admissibility.

Defendants have thoroughly pointed out areas of weakness in Dr. Spitz's methodologies and conclusions. However, those weaknesses do not reveal a methodology so flawed that Dr. Spitz should be precluded from testifying as an expert. See Kannankeril, 128 F.3d at 809 ("Whether ... [an] expert might have done a better job is not the test.").[2]

Defendants further argue that Dr. Spitz's report and testimony should be excluded because it is based on "junk science."

"[T]he standard of reliability is not a high one," but seeks "to exclude so-called "junk science" and ensure that expert

---

[2] Similarly, in their brief in support of the pending motion, defendants argue that Dr. Spitz's opinions lack credibility and are therefore unreliable. However, the discrepancies between Dr. Spitz's analysis, testimonial evidence, and other evidence of record are not the proper basis for challenging Dr. Spitz's opinions under Daubert. See id. at 806 (stating that "[a]dmissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined").

testimony is based on sound methods and valid procedures." Lillis v. Lehigh Valley Hospital, Inc., No. 97-3459, 1999 WL 718231, at *6 (E.D. Pa. Sept. 3, 1999). The Supreme Court has identified an example of "junk science" that should be excluded under Daubert as too unreliable: "the testimony of a phrenologist who would purport to prove a defendant's future dangerousness based on the contours of the defendant's skull." General Electric Co. v. Joiner, 522 U.S. 136, 153 n.6 (1997).

Here, Dr. Spitz is an experienced medical professional who arrived at his conclusions by weighing scientific evidence in conjunction with testimony and other evidence in the case. This is not the sort of so-called "junk science" that Daubert seeks to exclude. Where an expert is expected to deliver arguably "shaky" testimony, admission of that testimony may still be proper because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking such evidence." Daubert, 509 U.S. at 596. Therefore, we find that Dr. Spitz's expert opinions and report satisfy the Daubert standard.

For these reasons, we find that the defendants' motion to strike Dr. Spitz's opinions and report must be denied.

3. Mr. Van Blaricom

Defendants have also moved to exclude the expert report and opinions of Mr. Van Blaricom. They argue that Mr. Van

Blaricom's expert opinions and report are improper and should be excluded because they do "nothing but parrot the language from Dr. Spitz' [sic] report." [Doc. No. 141, at ¶ 14].

Defendants only mention Mr. Van Blaricom in two conclusory sentences at the end of their brief in support of the pending motion. [Doc. No. 143, at p. 17] ("Furthermore, the opinions of Van Blaricom, which simply parrot the opinions of Dr. Spitz, have even less validity because van Blaricom does not have in his background any expertise as a medical expert. His reliance on Dr. Spitz and Dr. Omalu is pure folly because those findings are incomplete, unreliable and without factual and sound medical basis.").

Defendants do not explain why or provide examples of how Mr. Van Blaricom's report allegedly parrots the report of Dr. Spitz. Our review of Dr. Spitz's and Mr. Van Blaricom's reports indicates that Mr. Van Blaricom's report is not a parrot of Dr. Spitz's as defendants argue. Mr. Van Blaricom does not make any medical findings or conclusions. Instead, based upon his knowledge, training, education, and skill in law enforcement and his review of depositions, police reports, medical records, pleadings, photographs, and other evidence in this case, Mr. Van Blaricom has concluded that Mr. Nykiel "was denied timely medical care" and that Mr. Nykiel "was more probably than not a victim of objectively unreasonable excessive force." [Doc. No. 144, Ex. 8, at 5, 7].

14

Plaintiff does not offer Mr. Van Blaricom as a medical expert. [Doc. No. 144, at p. 12]. Rather, plaintiff offers Mr. Van Blaricom as an expert in the use of force in law enforcement. [Id.] Although Mr. Van Blaricom reviewed and considered Dr. Omalu's autopsy report and Dr. Spitz's expert report in drawing non-medical conclusions relating to the officers' use of force on the night Mr. Nykiel died, he did so in order to reach his own conclusions as to whether such use of force was reasonable and appropriate.

We note that any doubt as to the helpfulness of Mr. Van Blaricom's testimony is resolved in favor of admissibility. The court of appeals has stated that:

> [D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations.

Linkstrom v. Golden T. Farms, 883 F.2d 269, 270 (3d Cir. 1989) (citations and quotations omitted).

For these reasons, defendants' motion to strike the report and opinions of Mr. Van Blaricom must be denied.

III. CONCLUSION

The Federal Rules of Evidence embody a strong and undeniable preference for the admission of any evidence having some potential to assist the trier of fact. The rule governing expert testimony embraces this policy and has been construed liberally in

favor of admissibility in this jurisdiction. <u>United States v. Velasquez</u>, 64 F.3d 844, 849 (3d Cir. 1995).

Based on the foregoing, the court denied defendants' motion at the <u>Daubert</u> hearing. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHERYL NYKIEL, individually and as )
ADMINISTRATRIX of the ESTATE of )
GREGORY T. NYKIEL, deceased, )
)
      Plaintiff, )
  v. ) Civil Action No. 08-0813
)
BOROUGH OF SHARPSBURG, SHARPSBURG )
POLICE DEPARTMENT, LEO RUDZKI, )
BOROUGH OF ASPINWALL, ASPINWALL )
POLICE DEPARTMENT, JOHN SABOL, )
BOROUGH OF BLAWNOX, BLAWNOX POLICE )
DEPARTMENT, GEORGE BUCHA, THOMAS )
DUFFY, MATT FUSCO, BOROUGH OF )
MILLVALE, MILLVALE POLICE )
DEPARTMENT, MIKE VITH, INDIANA )
TOWNSHIP, INDIANA TOWNSHIP POLICE )
DEPARTMENT, TOWNSHIP OF O'HARA, )
O'HARA POLICE DEPARTMENT, JASON )
MIDDLEBEE, TOWNSHIP OF HAMPTON, )
HAMPTON POLICE DEPARTMENT, TOWNSHIP )
OF SHALER, SHALER POLICE DEPARTMENT, )
BRIAN KELLY, ERIC STEGMAN, RICHARD )
ZILAITIS, SHAWN STELITANO, RICHARD )
FOWLER, BOROUGH OF ETNA, ETNA POLICE )
DEPARTMENT, and CHAD MITCHELL, )
)
      Defendants. )

ORDER

AND NOW, this 17th day of May, 2010, IT IS HEREBY ORDERED that defendants' motion to strike portions of the report and opinions of Dr. Omalu and to strike the reports and opinions of Dr. Spitz and Mr. Van Blaricom in their entireties [Doc. No. 141] is DENIED.

BY THE COURT:

/s/ _____ C.J.